UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANN V. ALLEN,

       Plaintiff,                          CIVIL ACTION NO. 07-13277

       v.                              DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Social Security case comes before the court on the parties' cross-motions for summary judgment. Plaintiff seeks judicial review of the defendant's decision denying her application for social security disability benefits and supplemental security income (SSI) benefits. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**II. Background**

In July, 2004, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) and SSI, alleging that she was disabled as of November 2003 due to a variety of physical and emotional impairments. (Tr. 50, 68) At the time of the ALJ's decision, plaintiff

- 1 -

was 52 years old. She graduated high school, and has a work history including employment as a janitor/chip handler. (Tr. 296)

The Social Security Administration (SSA) denied plaintiff's claim and plaintiff then requested a hearing before an administrative law judge (ALJ). A hearing was held on January 31, 2007. Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 288) The ALJ also took testimony from a Vocational Expert ("VE"). On March 16, 2007, the ALJ issued a written decision denying plaintiff's claim. The ALJ determined that, despite her impairments, plaintiff had the residual functional capacity (RFC) to perform a limited range of light work and that, based on the testimony of the VE, there were a significant number of such jobs available. (Tr. 14-23) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 23) The ALJ's decision became the final determination of the Commissioner.

Plaintiff contends the ALJ erred in determining that her psychiatric impairments permitted the performance of substantial gainful activity and in deciding that plaintiff had the RFC to perform unskilled light work in a competitive work setting. Thus, plaintiff argues that the decision is not supported by substantial evidence. The Commissioner contends that ALJ's decision is supported by substantial evidence and should thus be affirmed.

**III. Legal Standards**

**A. Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV. The Record**

At the hearing, plaintiff testified that she lives next door to her mother. Her mother and/or her daughter frequently cook for her. She cleans the house sometimes and she takes her mother to the grocery store to shop for her. She stated that she usually stays in the car because she feels like the aisles are closing in on her. (Tr. 292) On most days, she stays at home. Her

mother goes with her to see her doctor, psychiatrist, and therapist. (Tr. 292) Plaintiff attends church two or three days a week. She reads magazines, listens to gospel music, and watches TV now and then. (Tr. 293) She does not like to be around people or crowds, she becomes irritable when people talk to her, and she has insomnia which keeps her up for several days. (Tr. 296) She has been prescribed Klonopin for her sleep but she does not take it because it makes her sleep too deeply. (Tr. 294) She has not sought to have the medication changes and has not reported these difficulties to her physicians.

Plaintiff's mother Sarah Thompson also testified at the hearing. (Tr. 302) She stated that her daughter gets upset a lot and sometimes screams that she doesn't want to get out of the car. Id. Plaintiff is frequently tearful and does not dress well, although she used to. (Tr. 304) She is reluctant to leave the house. (Tr. 305)

Lawrence Zatkin testified as the vocational expert. (Tr. 306) He stated that she would have no transferable skills to other work. The vocationally limiting aspects of her testimony are that her depression and emotional inability to get up and out of the house since all jobs require attendance. (Tr. 307) If she could perform light work, which did not require being around unprotected heights or that would require driving of climbing or work around dangerous machinery, and if she were limited to simple and routine jobs, with low stress and limited contract with other people, then she could perform light cleaning jobs (3,200 office cleaning at night), bench jobs with sorting, packaging and assembly of small parts (8,500 jobs), or night watchman (a couple hundred jobs). These are all entry level, unskilled jobs.

Plaintiff treats with Dr. K.C. Joseph, a psychiatrist who in a letter regarding plaintiff's insurance claim with her employer, opines that the plaintiff was totally disabled. However, at the time Dr. Joseph rendered that opinion, the twelve month durational requirement had not been met. Further, there was some indication that plaintiff's first visit to Dr. Joseph occurred only after the company physician advised that he would terminate her disability unless she sought psychiatric help. The impression appeared to be that it was a "workplace conflict which had inappropriately turned into a case of psychiatric disability." Plaintiff was seen at Beaumont Hospital in August 2004 after treating with Dr. Joseph for a few months. She was treated through the Partial Hospital Program to stabilize her mood and increase her coping skills. (Tr. 169) On admission, she was less anxious. She was alert and oriented, her memory was intact, and her mood was depressed. She had no hallucinations. (Tr 169) During the program, which appeared to be brief, she became able to drive, could talk more freely, and reduced her anxiety. Her mood was still depressed. (Tr. 170) Dr. Joseph's treatment records show that she complained in July and September 2004 only of insomnia and nightmares. (Tr. 246-247)

Plaintiff's medical records show that she goes to the clinic doctor at least once a month. During virtually all the time, including when she was working, she reported some depression and anxiety. In August 2004 she was seen at the Exclusive Internal Medicine Clinic by Dr. Namen and was complaining of pain in her lower leg joint. (Tr. 178) She was alert, not in acute distress, well nourished, well developed, well hydrated. Similar findings were made in July when she was seen. (Tr. 190) There was a note of "panic disorder," but no other psychiatric assessment is noted. Her mental status was reported as normal. Id. She was seen by Dr. Namen

about that same time complaining of a cough and foot problems. A review of symptoms indicated, among other things, no psychiatric issues but she did have anxiety and a change in sleep patterns. (Tr. 177) She has been prescribed Paxil and tolerated it well. (Tr. 207) She repeatedly denied side effects from any of her medication. (See, e.g. Tr. 203) When seen in January 2004, she reported "moderate" panic attacks, having a problem being in crowds, nightmares, and "rage" episodes. (Tr. 210) In December 2003, she complained of anemia and chest pain. (Tr. 213, 220) Her cardiac studies at that time were completely normal. (Tr. 216)

A mental status exam from February 2004 by James Stanislaw indicates that plaintiff is anxious but her thought processes are above average and relevant and judgment is normal. (Tr. 253) The diagnosis was anxiety disorder, treated with medication. (Tr. 253-4) In November 2004, she was seen at the Jefferson Industrial Clinic for a psychiatric examination. (Tr. 258) Plaintiff stated that she worked as a janitor at General Motors for about 30 years. She liked to work. She related in November 2003 her male co-worker threatened to kill everyone in the department. After that, she became panicky, anxious, and depressed. She has no motivation and stays in bed. The examiner found that she had good contact with reality, fair insight and good self-esteem. Her affect was blunted and she was depressed, anxious and fearful. Her diagnosis included post traumatic stress disorder (PTSD) and her GAF was rated as 45. (Tr. 259) Physically, she had some hypertension and migraine headaches by history. (Tr. 262)

Dr. Howard Friedman evaluated plaintiff in January 2005. (Tr. 265) Plaintiff never experienced any psychiatric difficulties until the Fall of 2003 when a person she worked with stated that he hated everybody and wanted to kill everybody and that we're all going to hell

together. She informed her supervisor and, when she returned to work two days later, was advised that the supervisors believed the man was not dangerous. She was sent back to work but became extremely anxious and frighted and had her first severe panic attack. She went to the medical department and then treated with her family physician for a physical examination. She took a medical leave and was referred by William Beaumont Hospital to Dr. Joseph. She saw him about every two weeks until her insurance benefits expired. She also started outpatient psychotherapy with a social worker. Plaintiff lived in Grosse Pointe but had recently moved to Clinton Township. There were no signs of hallucination, delusion, illusion or referential thinking. Her mood was mildly to moderately depressed. She was not suicidal. He opined that plaintiff was totally disabled from employment due to post traumatic stress disorder. He assessed her GAF as 40. Dr. Friedman opined that she was totally disabled.

## V.  Analysis

Plaintiff contends that she meets the Listings (Listing 12.04) for impairments. The ALJ found that plaintiff had the severe impairments of anxiety, depression, headaches, hypertension and a history of sarcoidosis. Otherwise, she was in relatively good health with intermittent bouts of high blood pressure generally associated with stress. (Tr. 16) Plaintiff contends that the ALJ erred in determining that she did not meet the "B" criteria of Listing 12.04. The severity of plaintiff's mental impairments is measured by assessing functional limitations using the four "B" criteria: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.  The ALJ reviewed plaintiff's mental impairments by assessing her functional limitations using these four "B" criteria. He reviewed the state agency documentation

where plaintiff was noted to have "mild" difficulties of social functioning and daily living; "moderate" limitations with respect to concentration, persistence, and pace; and no episodes of decompensation. (Tr. 17) The ALJ found that plaintiff's activities of daily living were less constricted than her allegations in that she identified hobbies including reading, watching TV, and shopping. He found that she had "moderate" limitations in this area. With respect to her social functioning, plaintiff testified that she liked to be alone and is afraid of crowds, but also testified to attending church two to three times a week. The ALJ found that she had "moderate" limitations in this area but would be able to work in a situation where there was not significant contact with the general public. (Tr. 17) She was also found to have "moderate" limitations with respect to concentration, persistence, and pace, but would be able to perform simple, unskilled tasks. Hospital records note that her memory is intact, she had no hallucinations and reads on a daily basis. The ALJ determined that she had outpatient treatment and partial hospitalization between May 24, 2004 and June 16, 2004 but that she has not required inpatient hospitalization. He determined that there were one to two episodes of decompensation. The ALJ found that considering all of her circumstances she retained the ability to do work at the light exertional level, limited to simple unskilled tasks and no substantial contact with the general public, supervisors or co-workers. (Tr. 17) She must also avoid driving, climbing, unprotected heights and dangerous machinery, and perform simple repetitive tasks in a routine, low stress environment. (Tr. 19) This finding is consistent with her medical treatment.

Plaintiff's psychiatric treatment records consists primarily of medication reviews. She has never been hospitalized for mental illness. From August 2004 to October 2004, she reported

improvement in her sleep. Dr. Joseph advised her to gradually increase her social contacts. She improved with the outpatient therapy and was able to return to driving. Dr. Joseph initially predicted a return to work date of May 2004 and the diagnosis was adjustment disorder with mixed features. Dr. Friedman, whom plaintiff saw only one time, diagnosed post-traumatic stress disorder (moderately severe) and anxiety disorder (moderate) and concluded she could never work again. As a one time examiner, his opinion is not entitled to substantial weight. *McSwain v. Secretary of HHS*, 814 F.2d 617, 619 (11th Cir 1987). This is particularly true where the physicians conclusions are based solely on plaintiff's subjective statements.

Plaintiff is said to have a paranoid personality and no evidence of any type of association defect or thought disorder. She was mild to moderately depressed. Plaintiff's GAF scores generally ranged from 40 to 50, indicative of serious difficulties. The ALJ noted that such scores did not comport with the doctors' findings in the mild to moderate ranges. (Tr. 21)

The ALJ took plaintiff's limitations into account in limiting her to simple, routine tasks in a low stress environment. Although at the hearing, plaintiff's attorney seemed to indicate that plaintiff could not go anywhere, it appears that she does leave the house several times or more a week, for shopping, doctors' appointments, and church.

Plaintiff's past work was medium unskilled work and the ALJ reasonably concluded that she was not able to return to her past job. Given the restrictions of light work, plaintiff was found able to perform unskilled entry level cleaning and bench work jobs (assembler sorter, packager) which existed in significant numbers and which took into account plaintiff's mental impairments. This finding is supported by the medical evidence and plaintiff's daily activities.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002). In this case, the hypothetical adequately comported with the medical and mental conditions supported in the record and it was not error for the ALJ to seek a response from the vocational expert.

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Walters, 127 F.3d at 531. With regard to allegations of disabling pain, the regulations provide

that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); <u>see</u> <u>also</u> <u>Walters</u>, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

As noted by the ALJ, plaintiff's testimony is not supported by the medical evidence found in the record. Plaintiff's conservative treatment and absence of hospitalization weakens her credibility. Her symptoms appeared to be well addressed by the regime of Paxil and brief group therapy. An ALJ considers use of medication and other treatment when evaluating credibility. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). A plaintiff's statements regarding her condition are insufficient by themselves to establish that the plaintiff is disabled, and in this case the ALJ had substantial evidence to reject plaintiff's statements regarding the effects of her impairment on her ability to perform the limited work identified.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: April 1, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 1, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan
